GERALD T. McFADDEN (SBN 87446)
Attorney at Law
2366 Front Street
San Diego, CA  92101
(619) 338-0507
E-mail:  gtmfadden@hotmail.com


Attorney for Defendant
RAUL ARREOLA-MONTES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HON. ROGER T. BENITEZ)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. Case No. 07CR3208-BEN |
| | ) | |
| Plaintiff, | ) | STATEMENT OF FACTS |
| | ) | AND POINTS AND AUTHORITIES |
| v. | ) | IN SUPPORT OF MOTION |
| | ) | |
| RAUL ARREOLA-MONTES, | ) | |
| | ) | |
| Defendant. | ) | NCD:  April 18, 2008 |
| | ) | at 2:00 p.m. |

## I.  STATEMENT OF FACTS

The defendant is charged with being an alien who was previously deported and who was found in the United States on September 2, 2007, without official permission in violation of 8 U.S.C. § 1326.

The government relies on the removal of March 1, 2007.

An Immigration and Naturalization Service document, entitled Notice to Appear, dated February 22, 2007, alleged that:  the defendant was an alien present in the United States who had not been admitted or paroled; was a citizen of Mexico who had entered the United States on or about June 14, 2006, and was not then admitted or paroled after inspection by an Immigration Officer; the defendant was convicted on July 6, 2006, in the Superior Court of California, County of San Francisco, for the offense of possession of methamphetamine for sale in violation of Section 11378 of the California Health & Safety Code and was sentenced to 1 year and 4 months in prison; based

1

1  on documents provided by the government in this case and which Notice is Exhibit A of these

2  Exhibits.

3       The regular INA Section 240 removal hearing was conducted on or about March 1, 2007.

4  The removal proceeding involved about 22 respondents and was conducted via video link by the

5  Immigration Judge.  The proceeding was conducted in English and interpreted for the defendant.

6  The defendant was not represented by counsel.

7       The Immigration Judge advised all respondents that he would examine their cases to see if

8  any ground for relief from removal existed and would advise of such grounds and they could decide

9  if wished to apply.

10      The Immigration Judge elicited admission to the allegations set out in paragraph 2 above.

11 The Immigration Judge questioned the defendant regarding his immigration status and established

12 that the defendant was undocumented and not a lawful permanent resident. The Immigration Judge

13 did not ask any questions regarding the defendant's personal or familial circumstances.  The

14 Immigration Judge advised the defendant that he did not qualify for any relief based on an

15 aggravated felony conviction; and, the Immigration Judge did not advise the defendant of the right to

16 apply for discretionary relief from deportation or any form of discretionary relief.  The Immigration

17 Judge ordered the defendant removed and deported to and then established that the defendant did not

18 wish to appeal.  (Exhibit B and D.)

19      The defendant had been a resident of the United States for many years without documents.

20 The defendant had a child living in the area of Concord, California, who is a United States citizen.

21 This information was apparent from the defendant's A file at the time of the removal hearing.  (See

22 Exhibits C and D.)

23      Reference to that and related inquiry would have revealed that the defendant's son was born

24 on September 21, 2004, in Martinez, California, and his mother is Marina Cruz — a United States

25 citizen; the defendant and Marina consider themselves common law husband and wife and have had

26 a relationship since 2002; Marina had 3 U.S. citizen children (ages 2 - 13) from a prior relationship

27 whose father is not a significant part of their lives; the defendant treats these older children as his

28 own and they consider the defendant their father; and, the defendant's removal from the United

2

1  States is emotionally and financially hard on Marina and all 4 of the children.  (See Exhibit E.)

2  ## II.  POINTS AND AUTHORITIES

3  The immigration judge's statement that the defendant was ineligible for any relief and failure

4  to advise of the right to apply for discretionary relief and its nature was legally incorrect.

5  This failure to advise and misadvisement violated due process and the defendant may

6  challenge the deportation and removal in this criminal proceeding.   United States v. Arrieta, 224

7  F.3d 1076 (9th Cir. 2000).  While the Arrieta opinion involved a different form of relief than is at

8  issue here, the general principles are applicable.

9  In United States v. Arrieta, *supra*, the defendant had entered the United States in 1986 at the

10  age of nine.  In 1996, he was convicted of attempted forcible rape and sentenced to a year in jail.

11  Upon release in 1997, he had a deportation proceeding.  He was ordered deported and waived appeal.

12  In October 1998, the defendant was arrested and charged with a violation of 8 U.S.C. § 1326.  The

13  defendant's motion to dismiss the indictment based on the theory that the underlying deportation

14  proceeding violated his right to due process was denied.  The Ninth Circuit reversed the defendant's

15  conviction.

16  In a criminal prosecution under 8 U.S.C. § 1326, the defendant may challenge the validity of

17  the deportation if the deportation proceeding failed to provide a meaningful opportunity for judicial

18  review of the underlying deportation.  A defendant can succeed in this challenge only if he is able to

19  demonstrate that his due process rights were violated by defects in his underlying deportation

20  proceeding and he suffered prejudice as a result of the defects.  United States v. Arrieta, *supra*, 224

21  F.3d at 1079.

22  It is a violation of due process of law—which then permits collateral attack in a subsequent

23  criminal proceeding—not to advise an alien of right to apply for relief from deportation in a

24  deportation proceeding where the record contains an inference that the alien may be eligible for

25  discretionary relief from deportation.  An alien, who has been convicted of an aggravated felony but

26  who is not a lawful permanent resident and whose deportation is through a regular proceeding versus

27  through a special expedited removal proceeding, is eligible for discretionary relief from deportation.

28  United States v. Arrieta, *supra*, 224 F.3d at 1079-1081.

1    As to prejudice, a defendant must only show that he had a plausible ground for relief from

2  deportation.  A plausible ground includes extreme hardship to a spouse, parent, or child who is a

3  citizen or lawful permanent resident.  The existence of family ties in the United States is the most

4  important factor in determining hardship.  Preservation of family unity may be a central factor in an

5  extreme hardship determination.  Deprivation of the alien's family of various forms of non-economic

6  familial support and disruption of family unity may be plausible grounds for relief from deportation

7  and satisfy the prejudice requirement.  United States v. Arrieta, supra, 224 F.3d at 1081-1083.  See

8  also, e.g., Gutierrez-Centeno v. I.N.S., 99 F.3d 1529, 1533 (9th Cir. 1996); Cerrillo-Perez v. I.N.S.,

9  808 F.2d 1419, 1423-25 (9th Cir. 1987); Contreras-Buenfil v. I.N.S., 712 F.2d 401, 403 (9th Cir.

10  1983).

11    There are several different forms of relief from deportation ranging from a government

12  decision not to pursue the deportation to suspension of deportation and adjustment of status.  See

13  generally, Gordon, Mailman, Yale-Loehr, Immigration Law and Procedure, Vol. 6, Chp. 74

14  (Matthew Bender & Co., Inc., Revised Edition, December 2000).  At least three forms of relief are

15  applicable here.

16    First, the defendant should have been advised that he could have withdrawn his application

17  for admission and deport the county pursuant 8 U.S.C. § 1225(a)(1) and (4).  The defendant at the

18  time of the removal hearing was "an alien present in the United States who has not been admitted"

19  and so was "deemed [under the INA] an applicant for admission" under (a)(1); and such "an alien

20  applying for admission may, in the discretion of the Attorney General and at any time, be permitted

21  to withdraw the application for admission and deport immediately from the United States" under

22  (a)(4).

23    Second, the defendant should have been advised that he could parole into the United States

24  even if on condition of immediate or future departure.

25    The I.N.S. has extensive parole discretion.  Gordon, Mailman, Yale-Loehr, Immigration Law

26  and Procedure, Vol. 6, Sec. 62.01-62.04 (Matthew Bender & Co., Inc., Revised Edition, December

27  2007).

28    Third, the defendant should have been advised that he could request the Attorney General to

4

1   ///

2   ///

3   make a discretionary decision not to seek removal.[1]

4        Given the nature of the continuing changes in immigration law since 1988, a critical form of

5   relief from deportation is prosecutorial discretion.  The Attorney General has stated that "in view of

6   the expanded classifications of criminal aliens for whom no statutory relief from removal exists, the

7   exercise of such discretion can be 'the only means for averting the extreme hardship associated with

8   certain removal cases.'"  In re Mengisteab BAHTA, Interim Decision 3437 at pp. 15-16 (BIA,

9   October 4, 2000) (En Banc) (http://www.usdoj.gov/eoir/efoia/bia/Decisions/Revdec/pdfDEC/

10  3437.pdf).  As a matter of procedural due process, an alien should be notified of this form of relief.[2]

11  The defendant was not notified of this or any other form of relief.

12       The INS has inherent executive administrative discretion — on grounds ranging from

13  humanitarian grounds to its own convenience[3] — to decline to institute deportation proceedings,

14  terminate proceedings, or decline to execute a final order of deportation.  The INS has and does in

15  fact exercise this administrative discretion.  Reno v. American-Arab Anti-Discrimination

16

17  _____

18     [1] See, e.g., "Battered woman not given asylum, but can stay here," San Diego Union-Tribune, Section A, p. 3, January 22, 2005 ("A Guatemalan refugee who is the focus of a long-running debate over asylum for battered women will be allowed to remain in the United States, the Homeland Security

19  Department decided yesterday.  ¶The case of Rodi Alvarado Pena had been in the hands of Attorney General John Ashcroft, who said two years ago he would decide her fate.  Yesterday, he opted neither

20  to grant nor deny asylum to Alvarado, who came to the United States 10 years ago to escape repeated beatings from her husband, a former soldier. ¶After Ashcroft's decision, Homeland Security spokesman

21  Bill Strassberger said even if Alvarado ultimately is denied asylum, "the Department of Homeland Security will not pursue her removal from the United States."

22
       [2] The Fifth Amendment guarantees due process in deportation proceedings.  E.g., Campos-

23  Sanchez v. INS, 164 F.3d 448, 450 (9th Cir. 1999); and adequate notice is a critical aspect of procedural due process.  Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1021 (1970).  In addition to the basic

24  notice principle of due process of law, the immigration service's own regulations require such notice. Current 8 CFR 240.11(a)(2) requires that "[t]he immigration judge shall inform the alien of his or her

25  apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing."  Application for the exercise of prosecutorial

26  discretion is such a benefit.

27     [3] Aspects of this discretion are referenced in 8 CFR 239.2.  The immigration service can decide not to commence proceedings at all, and may cancel a notice to appear to an alien for determination of

28  deportability on grounds as broad and discretionary as the notice to appear was improvidently grant issued, 8 CFR 239.2(a)(6); and, can dismiss a deportation matter in immigration court on grounds as broad and discretionary as the proceeding was improvidently commenced, 8 CFR 239.2(C).

1    Committee, 525 U.S. 471, 484-85, 119 S.Ct. 936, 943-44 (1999).

2    The Board of Immigration Appeals has recently referred to the existence and exercise of the

3    Service's discretion.

4           "[T]here should be no question that, in fact, the Service still has prosecutorial
             discretion, which includes the discretion to address the equities of individual cases in
5           a manner that the rigid application of a broadly drawn statute often will not allow.

6           "In this regard, in restricting the judicial review of 'the decision or action by
             the Attorney General to commence proceedings,' Congress made clear in section
7           242(g) of the Act, 8 U.S.C. § 1252(g) (Supp. IV 1998), that such prosecutorial
             discretion still exists. Moreover, the United States Supreme Court recently reaffirmed
8           the Service's continuing prosecutorial discretion, including the discretion to decline to
             institute proceedings 'for humanitarian reasons or simply for its own convenience.'
9           *Reno v. Arab-American Committee*, 525 U.S. 471, 484 (1999). And, in response to a
             jointly posed question by 24 members of the United States Congress whether the
10          Service believed that the 1996 amendments to the Act eliminated this discretion, the
             Assistant Attorney General of the United States, Office of Legislative Affairs,
11          responded that the Service's fundamental authority to exercise prosecutorial
             discretion to decide whether or not to commence removal proceedings was not altered
12          by enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of
             1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546. The Assistant
13          Attorney General recognized further that, in view of the expanded classifications of
             criminal aliens for whom no statutory relief from removal exists, the exercise of such
14          discretion can be 'the only means for averting the extreme hardship associated with
             certain removal cases.' Letter from Robert Raben, Assistant Attorney General, Office
15          of Legislative Affairs, to Congressman Barney Frank (Jan. 19, 2000), *reprinted in* 77
             Interpreter Releases, No. 7, Feb. 14, 2000, app. I, at 217-20.
16
             "We do not raise this issue to suggest that the exercise of such discretion was
17          or is warranted in this case. We lack jurisdiction over this issue and, in any event, the
             record before us is far from complete. The Service may choose to further examine
18          this issue on remand. However, there should be no question within the Service that
             prosecutorial discretion, and its important concomitant responsibilities, continues to
19          exist." In re Mengisteab BAHTA, *supra*.

20    The remedial provisions for relief from deportation generally should be read generously both

21    in order to accomplish the purpose for which they are designed and to avoid precluding the Attorney

22    General from considering the exercise of his discretionary power to alleviate hardships. Wadman v.

23    I.N.S., 329 F.2d 812, 816-17 (9th Cir. 1964); Do v. Esperdy, 309 F.2d 467, 473-74 (2d Cir. 1962).

24    The defense contends that the affidavit of the defendant's common law wife —

25    demonstrating extreme hardship to their young United States citizen child and her other United

26    States citizen children — satisfies the prejudice requirement for this motion.

27    ///

28    ///

6

1  ///

2  ///

3  ### III.  CONCLUSION

4          For these reasons and any further reasons which come to this Court's attention prior to or at

5  the time of the hearing of this motion, counsel respectfully requests that this Court grant this motion.

6                                          Respectfully submitted,

7

8  Dated: April 6, 2008                    s/Gerald T. McFadden
                                           GERALD T. McFADDEN, Attorney for
9                                          Defendant RAUL ARREOLA MONTES
                                           E-mail: gtmcfadden@hotmail.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28