KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 07CR3208-BEN |
| Plaintiff, | ) |
| v. | ) **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:** |
| | ) **(1) DISMISS THE INDICTMENT** |
| RAUL ARREOLA-MONTES, | ) **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendant. | ) Date:   April 18, 2008<br>) Time:   2:00 p.m.<br>) Court:  The Hon. Roger T. Benitez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-captioned motion. Said response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

# I

# STATEMENT OF THE CASE

On November 28, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Raul Arreola-Montes ("Defendant") with Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326. On December 5, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

# STATEMENT OF FACTS

**A.    Defendant's Apprehension**

On September 2, 2007, the owners of Matolla's Ranch called Border Patrol to report that a suspected illegal alien was on their property. Matolla's Ranch is on the Madre Grande Truck Trail (a location approximately six miles west and 5 miles north of the Tecate Port of Entry). At approximately 6:30 p.m., Border Patrol Agent Carrillo responded to the citizen's report. Upon arriving at the ranch, Agent Carrillo encountered a single individual, who was later identified as Defendant Arreola-Montes. Agent Carrillo identified himself as a Border Patrol Agent and conducted an immigration interview. Defendant admitted he was a Mexican citizen and that he did not have documents allowing him to be in the United States legally.

At the station, Defendant's biographical information, fingerprints and photograph were entered into the IDENT and IAFIS computer databases, which revealed Defendant's criminal and immigration history. On September 3, 2007, at about 12:52 p.m., Agent Gonzalez advised Defendant of his Miranda rights in the Spanish language. Defendant elected to waive his rights and make a statement. Defendant admitted to being a citizen of Mexico and that he had previously been deported. Defendant stated he entered the United States by walking through the mountains near Tecate, California. Defendant admitted he did not ask for or receive permission to reenter the United States. Defendant stated he was going to Los Angeles.

//
//
//

1  **B.**   **Defendant's Criminal and Immigration History**

2        On August 7, 2006, Defendant was convicted in the Superior Court of California, County of San
3  Francisco, of violating HS 11378 – Possession of a Controlled Substance for Sale. Defendant was
4  sentenced to 16 months in custody.

5        On August 31, 2005, Defendant was convicted in the Superior Court of California, County of
6  Contra Costa, of violating HS 11378 – Possession of a Controlled Substance for Sale (based on a 2004
7  offense) and HS 11350 - Possession of Controlled Substance (based on a 2002 offense) . Defendant was
8  sentenced to 16 months in custody on each count, to run concurrently.

9        On April 26, 2004, Defendant was convicted in the Superior Court of California, County of
10  Contra Costa, of violating VC 14601.2(a) – Driving with a Suspended License. Defendant received 2
11  years probation. On January 9, 2002, Defendant was convicted in the Superior Court of California,
12  County of Contra Costa, of violating VC 23152(a) – DUI. Defendant received 3 years probation.

13        After Defendant's first drug trafficking conviction, he was deported by means of an
14  administrative deportation on May 4, 2006. After his second drug trafficking conviction, Defendant
15  appeared before an Immigration Judge for a deportation hearing on March 1, 2007. Defendant was
16  physically removed from the United States through the Calexico, California Port of Entry on March 5,
17  2007.

18        **III**

19        **DEFENDANT'S MOTION**

20  **A.**   **DEFENDANT'S 2007 DEPORTATION WAS VALID**

21        **1.**   **Defendant Validly Waived His Right to Appeal**

22        "In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if
23  he validly waived his right to appeal that order." United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.
24  2000). The fact that Defendant waived his right to appeal is clear from the face of the order. [Def's Exh.
25  B.] In addition, Defendant admits that at the end of his deportation hearing, he waived his right to appeal
26  the deportation order. [Def's Exh. D, ¶ 3.]

27        Although Defendant does not state so directly, it appears that he is arguing that his waiver of
28  appeal was invalid because the immigration judge misadvised him as to the availability of relief from

1 deportation. Defendant, however, is an aggravated felon with two prior drug trafficking convictions who was not eligible for any relief from deportation. Because Defendant raises no other ground for invalidating his deportation order, his motion should be denied.

Even if Defendant's waiver of appeal was somehow invalid, that is not the end of the analysis. Defendant still must establish the "fundamental unfairness of the underlying removal order." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); see also 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004). As discussed below, Defendant cannot prove either prong of the fundamental unfairness requirement.

**2.   Defendant cannot establish that his due process rights were violated**

**a.   Section 212(h)**

Defendant relies heavily on United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000), to support his argument that he had a plausible ground for discretionary relief from deportation based on "extreme hardship" to his U.S. citizen child.[1] [Def's Memorandum at 4.] Arrieta involved a non-LPR who was eligible for, but was not advised of, the potential for discretionary relief in the form of an "extreme hardship" waiver under INA Section 212(h).[2] Arrieta, 224 F.3d at 1079. What Defendant fails to acknowledge, however, is that, unlike the defendant in Arrieta, Defendant was statutorily ineligible for a hardship waiver.

The Notice to Appear alleged, and Defendant admitted, that Defendant was inadmissible under INA Section 212(a)(2)(A)(i)(II) in that he had a prior conviction relating to a controlled substance. [Def's Exh. A; Exh. C ¶ 3.] The only waiver provision applicable to aliens who are inadmissible under Section 212 is found in Section 212(h), which is commonly referred to as an "extreme hardship waiver." The discretion to grant a Section 212(h) waiver is not available to aliens who have a prior conviction relating to a controlled substance, unless that conviction was for "simple possession of 30 grams or less

---

[1]   Defendant claims to have a U.S. citizen son. Defendant does not claim any other relationship that would create a legitimate basis for an extreme hardship waiver.

[2]   8 U.S.C. § 1182(h)

of marijuana." See Section 212(h). At the time of his deportation, Defendant had two drug convictions for possession of methamphetamine for sale. Accordingly, Defendant was ineligible for a hardship waiver.

Defendant seems to argue that he should have been advised of a more general "hardship waiver" that is not tied to the waiver statute. Defendant, however, has provided no authority to support that an alien who is statutorily ineligible for a hardship waiver can nevertheless be granted relief from deportation based upon hardship. In fact, each case Defendant cites to support that "extreme hardship" provides a plausible ground for relief from deportation involved a statute expressly providing for such a waiver. Moreover – aside from Arrieta, which discusses the only form of waiver that is applicable to Defendant – Defendant relies on pre-IIRIRA cases involving suspension of deportation under repealed Section 244(a)(1).[3/] See Gutierrez-Centeno v. I.N.S., 99 F.3d 1529 (9th Cir. 1996); Cerrillo-Perez v. I.N.S., 809 F.2d 1419 (9th Cir. 1987); Contreras-Buenfil v. I.N.S., 712 F.2d 401 (9th Cir. 1983). These cases only serve to underscore that "extreme hardship" waivers are statutorily created. Congress created a waiver statute for criminal aliens (Section 212(h)), and then specifically carved out a group of aliens, including Defendant, who are not eligible for such a waiver. In essence, Defendant is arguing that the IJ should have ignored Congress's clear intent and considered him for a hardship waiver. That the IJ followed the law is certainly not a ground to invalidate Defendant's deportation.

### b. **Withdrawal of Application for Admission**

Defendant contends that the IJ erred by failing to advise him that he could withdraw his application for admission to the United States under 8 U.S.C. § 1225(4). No such right to withdraw exists. Defendant cites no statute, regulation, case law, or Constitutional provision that in any way holds that aliens have a "right" to withdraw their application for admission at the time of a removal hearing. Defendant does cite the statutory definition of the term "application for admission," but does not explain how that definition creates a due process right. Moreover, 8 C.F.R. § 235.4 actually contradicts Defendant's assertion that he should have been advised that he could withdraw his application for admission. The relevant portion of 8 C.F.R. § 235.4 reads as follows:

---

[3/]     8 U.S.C. § 1254 (repealed).

> The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings under section 240 of the Act . . . The alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission.

8 C.F.R. § 235.4. As no such right exists, the IJ was correct to not inform Defendant about it. A government agency's regulations that have been published in the Code of Federal Regulations have the force and effect of law. See First Tennessee Bank Nat. Ass'n v. Barreto, 268 F.3d 319, 329 (6th Cir. 2001); see also Chief Probation Officers of California v. Shalala, 118 F.3d 1327, 1333 n.6 (9th Cir. 1997) (assuming that regulations published in the C.F.R. carry the force of law); cf. Western Radio Services Co., Inc. v. Espy, 79 F.3d 896, 901 (9th Cir. 1986) (noting that regulations in agency manual did not have independent force and effect of law in part because they were not published in Code of Federal Regulations).

In addition, the applicable C.F.R. makes clear that "[a]n immigration judge may allow only an arriving alien to withdraw an application for admission." 8 C.F.R. § 1240.1(d). "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1.1(q). Defendant was found five miles inside the United States and therefore does not meet any of the various definitions of an "arriving alien." See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1116 (9th Cir. 2007) (alien who was found in the United States after entering illegally was not an "arriving alien"). Accordingly, the judge did not have discretion to allow him to withdraw his application for admission.

Putting aside that Defendant was not an arriving alien, Defendant has made no effort to establish that he would have qualified for withdrawal. There is no reason to believe that the Attorney General or the immigration judge would allow Defendant to withdraw his application for admission – which would have the same effect as a voluntary departure – even though Defendant was a previously deported, two-time aggravated felon who was statutorily ineligible for a voluntary departure. 8 U.S.C. § 1229c. Defendant contends that his deportation created a hardship for his U.S. citizen son and girlfriend, but that hardship would have been the same either way because Section 1225(4) requires the alien to "depart

immediately from the United States." Moreover, hardship is not relevant to the inquiry. Rather, an immigration judge "shall not allow" an alien to withdraw an application for admission unless the alien "establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." 8 C.F.R. § 1240.1(d). Any alleged hardship would have had no bearing on factors relating to Defendant's inadmissibility, namely, that he was in the country illegally and he had suffered a conviction for a controlled substance offense. [Def's Exh. A.]

### c.  Parole Discretion

Defendant also claims that he was denied due process because the immigration judge did not advise him that he could be paroled into the United States, even if on condition of immediate or future departure. [Def's Memorandum at 4.] To begin, parole is not a form of relief from deportation, rather, it is at most a temporary delay of deportation. Defendant fails to cite a single case or statute supporting that an immigration judge has authority to grant parole to an alien in removal proceedings. In addition, Defendant's argument ignores the key fact that he was in Calipatria State Prison at the time of his removal hearing. [Def's Exh. B.] It would make little sense for the immigration judge to parole Defendant into the United States given that he was in custody.

To the extent Defendant is arguing that the immigration judge should have allowed him a temporary parole upon his release from state custody, Defendant was barred from obtaining such relief. Pursuant to 8 U.S.C. § 1231(a)(2), "[d]uring the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(b)." 8 U.S.C. § 1231(a)(2). Because Defendant was in custody at the time of his removal hearing, his "removal period" began on the date he was released from his confinement at Calipatria. Id. § 1231(a)(1). As discussed above, Defendant was charged as being inadmissible under 212(a)(2) (codified as 8 U.S.C. § 1182(a)(2)) due to his controlled substance conviction, and the immigration judge found him to be removable as charged. [Def's Exhs. A-B.] Under these circumstances, the immigration judge was statutorily barred from releasing Defendant pending his removal. 8 U.S.C. § 1231(a)(2). Finally, even if Defendant had been paroled into the United States and allowed to report at a later date for deportation, the end result would have been same; therefore, Defendant suffered no cognizable prejudice.

If Defendant is claiming that the immigration judge should have granted him parole prior to finding him inadmissible, such claim also fails. Again, Defendant cites no statute, regulation, case law, or Constitutional provision that in any way holds he would have been entitled to parole into the United States or that the immigration judge had the authority to parole Defendant into the United States.

Only two provisions of the immigration code provide for parole, 8 U.S.C. §§ 1182(d)(5)(A) and 1226(a)(2)(B). See Ortega Cervantes v. Gonzalez, 501 F.3d 1111, 1114 (9th Cir. 2007). Pursuant to 8 U.S.C. § 1182(d)(5)(A) the Attorney General may, in his discretion, <u>temporarily</u> parole an alien into the United States for urgent humanitarian reasons or significant public benefit. Notably, when the purposes of the parole have been served, the alien must be returned to the custody from which he was paroled. Id. Defendant has not set forth any facts establishing that he would be eligible for a discretionary, temporary parole. Defendant's conclusory assertion of hardship hardly rises to the level of "urgent humanitarian reasons."

The other section authorizing parole is 8 U.S.C. § 1226, which authorizes the Attorney General to detain an individual, release on bond or release on conditional parole - <u>except as provided in subsection (c)</u> . 8 U.S.C. § 1226(a)(1)-(2). Pursuant to this section the Attorney General is directed to arrest an alien, like Defendant, who is inadmissible under 8 U.S.C. § 1182(a)(2) and to continue to detain such an alien unless there is release authority under subsection (2). 8 U.S.C. § 1226(c). The release authority is limited to those situations where that release is necessary to provide protection for a person who is cooperating with an investigation, is a witness, or when the alien's family member or associate is a witness. 8 U.S.C. § 1226(c)(2). The Attorney General's discretionary judgment regarding the application of this section is not subject to review. 8 U.S.C. § 1226(e). There is no evidence that Defendant falls into the category of aliens who may request this discretionary basis for release or parole. Moreover, it is quite obvious that the service exercised its discretion not to release (and subsequently parole into the United States) Defendant. The IJ had no authority to review such a discretionary decision, and there was no basis for the IJ to advise Defendant that he could have requested parole.

**d.    Prosecutorial discretion**

Defendant's final contention is that he was denied due process because the immigration judge did not advise him that he could apply "for the exercise of prosecutorial discretion." [Def's

Memorandum at 5, n. 2.] To begin, the decision to initiate and pursue removal proceedings is entirely within the discretion of the Attorney General. In this case, the Government initiated removal proceedings by filing a Notice to Appear and followed through by seeking and obtaining Defendant's deportation. If the Government had been inclined to exercise prosecutorial discretion for Defendant, it had ample opportunity to do so, but chose not to. Under these circumstances, the immigration judge had no discretion to terminate the proceedings. See Barahona-Gomez v. Reno, 236 F.3d 1115, 1119 (9thCir. 2001) (Citing Lopez-Telles v. INS, 2 F.2d 1302, 1303-04 (9thCir. 1977) ("the immigration judge is without discretionary authority to terminate deportation proceedings so long as enforcement officials of the INS choose to initiate proceedings against a deportable alien and prosecute those proceedings to a conclusion.") Accordingly, the judge did not err by failing to advise Defendant of relief that the judge could not grant.

### 2. **Defendant Cannot Show Prejudice**

Even if Defendant had established a due process violation, which he has not, Defendant also bears the burden of proving prejudice. See United States v. Proa-Tovar, 975 F.2d 592, 585 (9th Cir. 1992) (en banc). To show prejudice, the alien must demonstrate that he had "plausible grounds for relief from deportation." United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998). It is not enough to show that a procedural requirement was not complied with, or that an alien would have availed himself of missing procedural protections; the alien must "produce some concrete evidence indicating that the violation of a procedural protection actually had the potential for affecting the outcome of his or her deportation proceedings." United States v. Cerda-Pena, 799 F.2d 1374, 1379 (9th Cir. 1986); see also United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996).

Defendant's only asserted basis for a finding of prejudice is his claim of "extreme hardship." [Def's Memorandum at 4.] To support his claim of hardship, Defendant submits the declaration of his girlfriend, who is a United States citizen. Ms. Cruz states that she is Defendant's "common law wife." [Def's Ex. E, ¶ 1.] This claim is a tacit admission that Defendant and Ms. Cruz are not legally married. In fact, although Ms. Cruz states she started dating Defendant in 2002, she admits that Defendant did not live with her and her children full time until January 2005. [Id., ¶ 3.] Ms. Cruz also states that Defendant is the father of her youngest son, who was born in September 2004. [Id. ¶ 5.] Ms. Cruz claims

that Defendant's absence has been emotionally and financially difficult for her and her children. [Id. ¶ 6.]

The declaration of Ms. Cruz is insufficient to establish prejudice. The fact that Defendant lived in the United States illegally for several years and fathered a U.S. citizen child with his girlfriend is not uncommon. Indeed, Defendant's situation is typical of the deported aliens who appear before this Court everyday and can hardly be deemed an "extreme hardship" on par with a Guatemalan refugee who fled to United States to escape her abusive husband. [Def's Memorandum at 5 n. 1.] In fact, Defendant's claim of extreme hardship rings hollow: his U.S. citizen son was born in September 2004. [Def's Exh. E, ¶ 5.] In August 2005, Defendant was sentenced to 16 months custody for selling methamphetamine. On May 4, 2006, Defendant was released from custody and deported. On May 27, 2006, Defendant was found in the United States and removed again. Defendant illegally returned to the United States in June 2006 and was promptly convicted in August 2006 of selling methamphetamine. Defendant was again sentenced to 16 months in custody and, upon his release in March 2007, was again deported from the United States. Thus, for the vast majority of his son's short life, Defendant has been in prison. Given that Defendant had barely been a presence in his son's life, emotionally or financially, his deportation can hardly be deemed an extreme hardship.

**B.     DEFENDANT'S 2006 DEPORTATION WAS VALID**

Defendant's motion only challenges his 2007 deportation. He makes no challenge to his 2006 deportation. Defendant's 2006 deportation was the result of expedited proceedings under 8 U.S.C. § 1228(b) due to the fact that Defendant was an aggravated felon. See Exhibit 1. Under 8 U.S.C. § 1228(b)(5), "no alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion." Because Defendant was a non-LPR aggravated felon in expedited removal proceedings, he was ineligible for all the forms of discretionary relief raised by his motion. See United States v. Calderon-Segura, 512 F.3d 1104, 1108 (9th Cir. 2008) (affirming denial of motion to dismiss). Accordingly, none of the arguments raised by Defendant's motion have any bearing on the validity of his 2006 deportation order. Thus, even if the Court were to find the 2007 deportation order invalid, dismissal of the Indictment would not be required.

//

# IV

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motion be denied.

DATED: April 11, 2008.

>                               Respectfully Submitted,
>
>                               KAREN P. HEWITT
>                               United States Attorney
>
>                               /s/ ***Nicole Acton Jones***
>                               NICOLE ACTON JONES
>                               Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL ARREOLA-MONTES,<br><br>Defendant. | Criminal Case No. 07CR3208-BEN<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Gerald McFadden

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 11, 2008.

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney